IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE: INTERIOR MOLDED DOORS ANTITRUST LITIGATION | Lead Civil Action No. 3:18-cv-00718-JAG |
| IN RE: INTERIOR MOLDED DOORS INDIRECT PURCHASER ANTITRUST LITIGATION | Lead Civil Action No. 3:18-cv-00850-JAG |

## OPINION

In these consolidated class actions, the plaintiffs allege that the defendants, Masonite Corporation and Jeld-Wen, Inc., conspired to fix prices in the interior molded doors market in violation of federal and state antitrust laws. Masonite has moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the Middle District of Florida or alternatively the District of Delaware.[1] For the reasons that follow, the Court will deny the motion.

## I. BACKGROUND

Masonite, a Delaware corporation with its principal place of business in Florida, and Jeld-Wen, a Delaware corporation with its principal place of business in North Carolina, manufacture interior molded doors ("IMDs") and "doorskins." Doorskins account for about 70 percent of the manufacturing cost of IMDs. In 2012, Jeld-Wen acquired Craftmaster International, Inc. ("CMI"), a major doorskin manufacturer. After the merger, the defendants collectively controlled 100 percent of the doorskin industry and roughly 85 percent of the IMD

---

[1] Jeld-Wen filed a memorandum in support of Masonite's motion to transfer.

market in the United States. Because the manufacturers comprising the other 15 percent of the IMD market did not manufacture doorskins, they had to purchase doorskins from the defendants.

In 2014, Jeld-Wen began raising doorskin prices to other IMD manufacturers, including those with whom Jeld-Wen had long-term supply agreements. One such manufacturer, Steves & Sons, Inc., refused to pay the increased costs and tried to find another supplier. Steves approached Masonite, the only other major doorskin manufacturer in North America, but Masonite refused to enter into a long-term supply agreement with Steves.[2] Shortly thereafter, Masonite publicly announced that it would no longer sell doorskins to other IMD manufacturers, leaving Jeld-Wen as the only major manufacturer of doorskins in North America and, consequently, Steves' and other IMD manufacturers' only option.

In October, 2016, Steves sued Jeld-Wen in the Eastern District of Virginia, alleging that Jeld-Wen's acquisition of CMI violated section 7 of the Clayton Act because it substantially decreased competition in the residential door market.[3] In February, 2018, a jury awarded Steves $58 million ($175 million after trebling). The Court also ordered Jeld-Wen to completely divest CMI. Jeld-Wen has moved for a new trial—a motion currently pending.

On the heels of the *Steves* verdict, two groups of plaintiffs[4] began filing these lawsuits in the Eastern District of Virginia against Masonite and Jeld-Wen. The direct purchaser plaintiffs[5]—those who purchased IMDs directly from the defendants—allege that Masonite and

---

[2] According to the plaintiffs, Masonite offered to sell to Steves only on an as-needed basis for 37 percent more than Jeld-Wen's price. Steves also considered foreign suppliers, but none could meet Steves' needs.
[3] *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, No. 3:16-cv-00545-REP.
[4] The Court will refer to both groups collectively as the "plaintiffs."
[5] The named direct purchaser plaintiffs are Grubb Lumber Company, Inc., and Len-Co Lumber Corporation. The direct purchaser plaintiffs have also named Jeld-Wen's parent company, Jeld-Wen Holding, Inc., as a defendant. Like Jeld-Wen, Jeld-Wen Holding is incorporated in

Jeld-Wen conspired with each other to adopt uniform price increases for IMDs after Jeld-Wen acquired CMI in violation of section 1 of the Sherman Act. Soon thereafter, the indirect purchaser plaintiffs[6]—those who purchased the defendants' IMDs through a third-party, such as a reseller—brought suit against the defendants. They also allege that the defendants violated section 1 of the Sherman Act. In addition, the indirect purchaser plaintiffs assert violations of various state antitrust laws, consumer protection laws, and unjust enrichment laws.

Masonite has moved to transfer venue to the Middle District of Florida or alternatively the District of Delaware. The plaintiffs ask the Court to keep these consolidated actions in the Eastern District of Virginia because of their close factual and legal relationship with *Steves*.

## II. DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district... where it may have been brought." 28 U.S.C. § 1404(a). In deciding whether to transfer venue, a decision that "is committed to the district court's sound discretion," the Court makes two inquiries: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The moving party "bears the burden of showing that transfer is proper," *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007), and "must also demonstrate that transfer does more than merely 'shift the inconvenience' to the other party," *id.* (quoting *DMP Corp. v. Fruehauf Corp.*, 617 F. Supp. 76, 77 (W.D.N.C. 1985)).

---

Delaware and maintains its principal place of business in North Carolina. The Court will refer to Jeld-Wen and Jeld-Wen Holding as "Jeld-Wen."

[6] The named indirect purchaser plaintiffs are two corporations and nineteen individuals.

## A. Proper Venues

The Court must first determine whether the plaintiffs could have brought their claims in the Middle District of Florida or the District of Delaware. Because the Clayton Act provides special jurisdiction and venue requirements for private antitrust actions, including claims under the Sherman Act, the general venue provisions of 28 U.S.C. § 1391 do not apply here. *See* 15 U.S.C. § 22. Under the Clayton Act, a plaintiff may bring suit either "in the judicial district whereof [the defendant] is an inhabitant" or "in any district wherein [the defendant] may be found or transacts business." *Id.* "To be found in a district for the purposes of the venue section of the Clayton Act, a corporation must have duly authorized officers and agents carrying on the business of the corporation within the district." *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F. Supp. 744, 747 (E.D. Va. 1987).

Here, each defendant "may be found" and "transacts business" in the Middle District of Florida. [7] 15 U.S.C. § 22; *see Reynolds Metals Co.*, 669 F. Supp. at 747. Thus, venue would have been proper in the Middle District of Florida. Furthermore, the defendants are both incorporated in Delaware and thus "inhabitants" of Delaware. *See In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 n.6 (3d. Cir. 2004) ("Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction."). Accordingly, venue also would have been proper in the District of Delaware. Because the plaintiffs could have brought their claims in either the Middle District of Florida or the District of Delaware, Masonite satisfied the first requirement under § 1404(a).

---

[7] The Eastern District of Virginia also is an appropriate venue under the Clayton Act because both defendants "may be found" in this district.

4

### B. *Factors to Balance in Venue Motions*

Next, courts must balance four factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994-95 (E.D. Va. 2011) (quoting *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).

#### 1. *The Plaintiffs' Choice of Forum*

The first factor weighs against transfer. Although "the plaintiff's choice of forum is ordinarily entitled to substantial weight," courts can disregard it "when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum." *Koh*, 250 F. Supp. 2d at 632. For Masonite to convince the Court to disregard the plaintiffs' choice of forum, it must meet "the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought." *Id.* (quoting *Medicenters of Am., Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184 (E.D. Va. 1974)).

When none of the operative events took place in a plaintiff's chosen forum, "a motion to transfer to the district in which the events occurred is likely to succeed." *Phillips v. Uber Techs., Inc.*, No. 3:15-cv-554, 2016 WL 165024, at * 2 (E.D. Va. Jan. 13, 2016). Courts, however, will afford a plaintiff's choice of forum "substantial weight" when it "bears a substantial relation to the cause of action." *Id.* Here, none of the plaintiffs reside in Virginia, nor did any of the operative events take place here. But these consolidated actions bear an undeniably strong relation to *Steves*, a case decided—and still pending—in this district. Both cases concern the IMD market, which is unusually susceptible to illegal price fixing schemes; both cases involve Jeld-Wen's conduct in the IMD market; and both cases involve IMD manufacturer plaintiffs

5

alleging violations of antitrust laws. Because of the close relationship between these consolidated actions and *Steves*, the Court affords substantial weight to the plaintiffs' choice of forum.

### 2. *Convenience of the Parties and Witnesses*

The convenience of the parties and the witnesses does not favor either granting or denying the motion to transfer. "The party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005). Furthermore, "[t]ransfer is not appropriate merely to shift the hardships" from one side to the other. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998).

A number of factors support transfer. Regarding the Middle District of Florida, Masonite's corporate headquarters, main witnesses, and "documents and electronic records containing information potentially relevant" to these consolidated actions are located there. (Dk. No. 82, Ex. 1.)[8] Jeld-Wen also operates two facilities in the Middle District of Florida, so Jeld-Wen may have witnesses and relevant evidence there. Furthermore, two of the indirect purchaser plaintiffs live in Florida.[9] Regarding the District of Delaware, both defendants are incorporated there, and the direct purchaser plaintiff Grubb Lumber is incorporated there and maintains its principal place of business there.

---

[8] All docket citations in this Opinion coincide with Lead Civil Action No. 3:18-cv-00718-JAG.
[9] The indirect purchaser plaintiffs' original complaint included a named plaintiff, Andrew Knight, who lives in the Middle District of Florida. In their amended complaint, however, the indirect purchaser plaintiffs dropped Knight and added two additional Florida residents, though it is not clear whether these two Floridians live in the Middle District of Florida.

6

Other relevant factors, however, do not support transfer. First, Jeld-Wen maintains its principal place of business in North Carolina, which is closer to this district than the Middle District of Florida or the District of Delaware. Transfer to the Middle District of Florida would simply swap which defendant is farther from the forum. *Cf. Affinity Memory & Micro, Inc.*, 20 F. Supp. 2d at 955.

Second, of the twenty-three named plaintiffs, only one lives in Delaware and two live in Florida. The other twenty named plaintiffs either reside or do business in states other than Florida and Delaware, including fourteen states across the country. Consequently, many potential key witnesses and evidence will *not* be found in either Delaware or Florida. Transfer to either the Middle District of Florida or the District of Delaware, therefore, will not constitute a more convenient forum than this district. *See Innovative Commc'ns Techs., Inc. v. Vivox, Inc.*, No. 2:12-cv-7, 2012 WL 4738979, at *5-6 (E.D. Va. Oct. 3, 2012) ("[G]iven that multiple defendants are involved in this matter, and that relevant evidence, documents, and key witnesses are located in several [forums], convenience of the parties and witnesses does not support a decision to transfer this action at this time.").

Moreover, a significant portion of the defendants' evidence will likely consist of electronically stored information, negating the need for close proximity to the source of the evidence. In any event, Masonite has failed to show that it would be unable to produce any witnesses or relevant evidence if these consolidated actions remain in this district. Masonite's claim that its "documents and electronic records" are located in the Middle District of Florida, therefore, has a "de minimis [effect] and [is] not entitled to substantial weight in the overall balance." *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2015 WL 1800274, at *3-4 (E.D. Va. Apr. 16, 2015). Accordingly, relevant factors both support and oppose transfer.

### 3. *Interest of Justice*

The interest of justice also weighs against transfer. "The interest of justice encompasses public interest factors aimed as 'systemic integrity and fairness.'" *Samsung*, 386 F. Supp. at 721 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). In some cases, the interest of justice outweighs the other factors, even when those factors suggest a different outcome. *See Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). Courts consider "the pendency of a related action, the court's familiarity with applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Pragmatus*, 769 F. Supp. 2d at 996. The first two considerations bear upon Masonite's motion to transfer.[10]

#### a. *Pendency of Related Actions*

The pendency of a related action in this district counsels against transfer. To promote judicial economy, courts may deny a motion to transfer a case involving claims that are similar to, but distinguishable from, claims in another case pending in the same district. *See, e.g., Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, 2018 WL 6059386, at *3 (E.D. Va. Nov. 19, 2018) (noting that judicial economy weighed against transfer when a pending action in the same district involved "the same [d]efendants and similar claims").

Here, *Steves* and these consolidated actions share substantially similar underlying facts and governing law, and they both involve Jeld-Wen as a defendant. *Cf. Samsung*, 386 F. Supp. 2d at 386 ("Judicial economy and the interest of justice favor a venue which has already

---

[10] The plaintiffs also argue that the Court should deny Masonite's motion because this district has a speedier docket than the other two forums. The plaintiffs' initial proposed schedule with summary judgment deadlines extending into 2021, however, undercuts their argument in that respect. The speed of this district's docket compared to the other two forums, therefore, does not constitute a relevant consideration in the interest of justice.

8

committed judicial resources to the contested issues and is familiar with the facts of the case."). Given the pendency of *Steves* in this district, transfer would undermine judicial economy.

### b. The Court's Familiarity with Applicable Law

This factor does not clearly weigh in favor of or against transfer. Generally, "it is preferable to have cases decided by courts familiar with the substantive law to be applied." *Gen. Foam Plastics Corp. v. Kraemer Export Corp.*, 806 F. Supp. 88, 90 (E.D. Va. 1992). On the one hand, Judge Robert E. Payne presided over the *Steves* trial so "[t]here is no additional efficiency to be found [in] having a different judge in the same District as Judge Payne oversee this case as opposed to one sitting in the Middle District of Florida or the District of Delaware." (Dk. No. 85, at 1.)

At the same time, transfer to either the Middle District of Florida or the District of Delaware would not involve any more efficiency than keeping these consolidated actions in this district. First, all federal courts are equally capable of presiding over claims arising under federal law. Second, the indirect purchaser plaintiffs bring various state law claims. Regardless of the forum, the presiding court must decide claims arising under other states' laws, and Masonite has not demonstrated why either the Middle District of Florida or the District of Delaware is better suited than this Court to hear such claims. In sum, the interest of justice weighs against transfer.

### III. CONCLUSION

Because the relevant factors weigh against transfer, the Court will deny the motion.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 6 March 2019
Richmond, VA

/s/ /s/
John A. Gibney, Jr.
United States District Judge

9